UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

    - v -                           :          06 Cr.

CAROL PEIRCE,                                **06 CRIM. 1032**

           Defendant.          :

- - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED  NOV 0 8 2006
INDICTMENT

## COUNT ONE

### (Conspiracy To Defraud WIC)

The Grand Jury charges:

### Relevant Persons And Entities

1.  At all times relevant to this Indictment, the Women, Infants, and Children ("WIC") program was a Federally-funded program designed to provide nutritious foods and nutritional counseling to low-income mothers, expectant mothers, infants, and young children.  Among other things, the WIC program provided participants with food vouchers for certain specified nutritious foods, such as milk, infant formula, and baby cereal. The WIC program also provided nutrition education for participating mothers and expectant mothers, which included teaching mothers how to prepare nutritious meals through "food demonstrations" periodically conducted at WIC's various offices. The WIC program was funded by grants from the United States Department of Agriculture's Food and Nutrition Service to various state health agencies.  The day-to-day operations of the WIC

program typically were administered locally through various entities, such as local hospitals and clinics, which applied to participate in the WIC program through their respective state health agencies.

2.    In the State of New York, the WIC program is administered by the New York State Department of Health ("DOH") through a number of local entities selected by the DOH.  The New York and Presbyterian Hospital in Manhattan ("New York-Presbyterian Hospital") is one of the entities DOH has selected to run a local WIC program.  At all times relevant to this Indictment, New York-Presbyterian Hospital's WIC program (the "New York-Presbyterian WIC Program") operated out of several office locations in northern Manhattan.  By in or about November 2005, the New York-Presbyterian WIC Program served over 10,000 women and children participants.

3.    From at least in or about 1990, through in or about August 2005, CAROL PEIRCE, the defendant, was the director the New York-Presbyterian WIC Program.  At certain times relevant to this Indictment, PEIRCE maintained homes in Teaneck, New Jersey, and Port St. Lucie, Florida.  From on or about August 12, 2005, through the filing of this Indictment, PEIRCE has been employed as the Nutrition Program Director for the Palm Beach County, Florida, Health Department.

4.    At all times relevant to this Indictment, an

2

individual referred to herein as "CC-1" was an administrative assistant at the New York-Presbyterian WIC Program. Until in or about August 2005, CC-1 reported directly to CAROL PEIRCE, the defendant.

The Fraudulent Scheme

5. From at least in or about May 1999, through in or about November 2005, in the Southern District of New York and elsewhere, CAROL PEIRCE, the defendant, CC-1, and others known and unknown, engaged in a fraudulent scheme to defraud the WIC program out of hundreds of thousands of dollars for their personal benefit.

6. As a part of the fraudulent scheme, CAROL PEIRCE, the defendant, between in or about May 1999 and in or about November 2005, purchased thousands of dollars' worth of items and services for her own personal benefit using a WIC-program American Express Card. PEIRCE incurred a number of these personal expenses in the vicinity of Port St. Lucie, Florida, where she was in the process of establishing a home. After incurring these expenses, PEIRCE then directed CC-1 or others to prepare and submit false expense reports to the New York-Presbyterian WIC Program using a New York-Presbyterian Hospital "Special Fund Authority for Voucher" form. These expense reports falsely represented that PEIRCE's personal expenses were legitimate, WIC-program related expenses, thereby fraudulently

3

inducing the New York-Presbyterian WIC Program to pay for the
personal items and services that PEIRCE had purchased.  The
personal items PEIRCE purchased using the New York-Presbyterian
WIC Program American Express card included supplies from a Home
Depot store near her home in Florida; items from Chef's Catalogue
(including an ice cream maker); a Sony Camcorder from a Wal-Mart;
silver plates and a hostess set from the Ross Simons Catalogue;
outdoor lights from Lighting Expo for her home in Florida; a
stained glass ceiling lamp from Touch of Class; and an Odyssey
tea kettle from Fortunoff.  The following chart summarizes some
of the expenses that PEIRCE incurred with the WIC-program
American Express card:

| APPROX. DATES OF CHARGES | VENDOR | DESCRIPTION OF SELECTED ITEMS OR SERVICES PURCHASED | APPROX. AMOUNT OF PURCHASES |
|---|---|---|---|
| 5/99– 12/04 | Chef's Catalogue | Kitchenware, including a decorative spigot jug; Cuisinart Ice Cream Maker; and a Cuisinart 17-Piece Cookware set | $1,215 |
| 11/99– 7/05 | National Wholesale | Apparel and housewares | $5,894 |
| 1/00– 6/05 | Home Depot, NJ and FL | Home improvement/building supplies, including door handle set, plants, paint, and extension cords | $4,768 |
| 6/00– 6/05 | PC Richard & Son | Electronics | $1,439 |
| 11/00– 11/05 | America OnLine | Personal e-mail accounts for members of PEIRCE's family | $1,393 |
| 5/01– 3/05 | Wal Mart, NJ and FL | General merchandise, including Sony Camcorder | $1,688 |

4

| APPROX. DATES OF CHARGES | VENDOR | DESCRIPTION OF SELECTED ITEMS OR SERVICES PURCHASED | APPROX. AMOUNT OF PURCHASES |
|---|---|---|---|
| 5/31/01 | Budget Rent-A-Car, Dania, FL | Car rental | $95 |
| 8/16/01 | D&E Travel Corp. | Airfare from Newark, NJ, to Fort Lauderdale, FL, departing 10/6/01 | $141 |
| 10/01-2/05 | Touch of Class | Household items, including decorative door topper; decorative light switches; foot comfort mats; a Tiffany-style stained glass ceiling lamp; a towel set; a decorative mirror; decorative soap dispensers; clocks | $1,807 |
| 10/6/01 | Alamo Rent-A-Car, Fort Lauderdale, FL | Car rental | $235 |
| 10/10/01 | Fairfield Inn, Palm Beach, FL | Hotel stay, 10/6/01-10/10/01 | $567 |
| 3/02-8/04 | Lighting Expo | Light fixtures, including outdoor lighting | $1,362 |
| 5/02-5/04 | Fortunoff | Houseware, including tea kettle | $480 |
| 5/02-4/03 | Linens and Things | Household items, including a throw-blanket; beaded tassels for curtains; chair pads; window treatments; table clothes; a clothes line | $1,759 |
| 5/20/02-5/31/02 | Brylane Kitchen | Kitchenware, including including a flatware, bowls, a cooking dish, and sundae cups | $359 |
| 8/18/02 | Lowes-West Jensen Beach, FL | Home improvement merchandise | $276 |
| 8/19/02 | Target Stores, Stuart, FL | General merchandise | $48 |
| 9/14/02 | Firestone | Tires and service | $54 |

| APPROX. DATES OF CHARGES | VENDOR | DESCRIPTION OF SELECTED ITEMS OR SERVICES PURCHASED | APPROX. AMOUNT OF PURCHASES |
|---|---|---|---|
| 10/02-8/05 | Office Depot, Jensen Beach, FL | Office supplies | $1,628 |
| 10/7/02 | Alamo Rent-A-Car, West Palm Beach, FL | Car rental | $309 |
| 10/16/02 | Travelocity | Airfare from Newark, NJ, to West Palm Beach, FL, 10/7/02 | $211 |
| 12/30/02 | Brandsmart Home Electronics, West Palm Beach, FL | HP printer/scanner/fax/copy machine, antenna | $340 |
| 4/03-7/05 | Ross Simons Catalogue | Housewares, including wall sculpture; needlepoint stool; Bordeau bench; silver plate and hostess set; etched glass carafe and ice bucket | $1,151 |
| 7/03-3/05 | Home Decorator | Waste bin and vanity stool | $268 |
| 7/8/03 | The Linen Source | General merchandise | $230 |
| 9/19/03 | JetBlue | Airfare from John F. Kennedy Airport to Fort Lauderdale, FL, 11/19/03 | $85 |
| 11/22/03 | Wyndham Resort, Fort Lauderdale, FL | Hotel charges | $392 |
| 6/15/04 | Capital Lighting | Westminster door chimes | $169 |
| 8/5/04 | Touchstone | Desk accessories and organizer | $417 |
| 11/30/04 | Improvements Catalogue | Touchpad door lock | $164 |
| 12/29/04 | Home Marketplace | Mug set, tool holders and long-reach duster | $164 |
| 1/13/05 | JetBlue | Airfare from John F. Kennedy Airport to Orlando, FL, 4/16/05 | $515 |

| APPROX. DATES OF CHARGES | VENDOR | DESCRIPTION OF SELECTED ITEMS OR SERVICES PURCHASED | APPROX. AMOUNT OF PURCHASES |
|---|---|---|---|
| 7/30/05 | Aquarius Irrigation, NJ | Underground wiring materials for outdoor lighting | $147 |
| 9/15/05 | Hyatt Regency, Arlington, VA | Hotel stay | $219 |

7.    As a further part of the fraudulent scheme, CAROL PEIRCE, the defendant, agreed to hire ProGlow, a company secretly owned and operated by CC-1, to clean the New York-Presbyterian WIC Program's various offices.  In exchange, PEIRCE and CC-1 agreed that CC-1 would use some of the money that ProGlow received under the cleaning contract to pay for a cleaning woman to clean PEIRCE's home in Teaneck, New Jersey, approximately two times per week.  To conceal the fraudulent arrangement from others in the New York-Presbyterian WIC Program, PEIRCE directed CC-1 not to use CC-1's own name in connection with documentation (such as invoices) that ProGlow submitted to the New York-Presbyterian WIC Program.  Accordingly, in ProGlow's correspondence with the New York-Presbyterian WIC Program, CC-1 used the name of a friend.  To perform the actual cleaning of the New York-Presbyterian WIC Program's offices, CC-1 hired a number of individuals (primarily aliens), but failed to report income of the ProGlow workers to the tax authorities or to withhold required income taxes.  Between in or about September 2001, and in or about November 2005, CC-1 caused approximately fifty-three

(53) invoices, totaling approximately $317,178, to be submitted to the New York-Presbyterian WIC Program on behalf of ProGlow for maintenance and housekeeping services, and PEIRCE and CC-1 caused the New York-Presbyterian Hospital to send to ProGlow, by United States Mail, approximately fifty-three (53) checks, totaling approximately $317,178, for maintenance and housekeeping services.

8.    As a further part of the fraudulent scheme, CAROL PEIRCE, the defendant, approved, and CC-1 submitted, approximately twelve (12) phony invoices to the New York-Presbyterian WIC Program, totaling approximately $15,275, purportedly on behalf of a retail grocery business or "bodega" in Queens, New York, known alternatively as "Mejia Grocery" and "Joance Mini Market" (referred to herein as "Meija Grocery"). Each such phony invoice falsely billed the New York-Presbyterian WIC Program for a minimum of approximately $1,200, purportedly for food and services that Mejia Grocery had provided to the New York-Presbyterian WIC Program for "food demonstrations" for WIC program participants.  In truth and in fact, however, Mejia Grocery had not provided the food or services listed on the invoices.  Instead, after the New York-Presbyterian WIC Program had paid thousands of dollars to Mejia Grocery based on each phony invoice, CC-1 arranged with the owner of Mejia Grocery to have the fraudulently-obtained money provided to CC-1, which CC-1

then used for his/her personal benefit.

9. As a further part of the fraudulent scheme, CAROL PEIRCE, the defendant, submitted phony time sheets to the New York-Presbyterian WIC Program, which time sheets falsely stated that PEIRCE was working at the New York-Presbyterian WIC Program when she in fact had left her job at the New York-Presbyterian WIC Program, and moved from New York to Florida, where she had commenced working as the Nutrition Program Director for the Palm Beach County, Florida, Health Department.

<u>Statutory Allegation</u>

10. From at least in or about May 1999, through in or about November 2005, in the Southern District of New York and elsewhere, CAROL PEIRCE, the defendant, CC-1, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 666, 1341 and 1343 of Title 18, United States Code.

11. It was a part and an object of the conspiracy that CAROL PEIRCE, the defendant, and CC-1, being agents of an organization that received in a one-year period benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance, to wit, the New York-Presbyterian WIC Program, and their co-conspirators, unlawfully, willfully, and knowingly, would and did embezzle, steal, obtain by fraud, and

otherwise without authority knowingly convert to the use of a person other than the rightful owner and intentionally misapply, property that is valued at $5,000 and more and is owned by and under the care, custody and control of such organization, in violation of Title 18, United States Code, Section 666.

12. It was further a part and an object of the conspiracy that CAROL PEIRCE, the defendant, CC-1, and their co-conspirators, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice, and attempting so to do, would and did place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, such matters and things, in violation of Title 18, United States Code, Section 1341.

13. It was further a part and an object of the conspiracy that CAROL PEIRCE, the defendant, CC-1, and their co-conspirators, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud,

and for obtaining money and property by means of false and
fraudulent pretenses, representations, and promises, would and
did transmit and cause to be transmitted by means of wire
communication in interstate and foreign commerce writings, signs,
signals, pictures, and sounds for the purpose of executing such
scheme and artifice to defraud, in violation of Title 18, United
States Code, Section 1343.

Overt Acts

14.   In furtherance of said conspiracy and to effect
the illegal objects thereof, the following overt acts, among
others, were committed in the Southern District of New York and
elsewhere:

a.   On or about February 15, 2001, while in New
York, New York, PEIRCE and CC-1 caused the New York-Presbyterian
Hospital to send to Mejia Grocery, by United States Mail, a check
for approximately $1,250, by falsely representing that the money
was being used to pay Mejia Grocery for food demonstration
materials.

b.   In or about September 2001, PEIRCE spoke to
CC-1 about having CC-1 arrange for the cleaning of the New York-
Presbyterian WIC Program's various offices.

c.   In or about September 2001, PEIRCE and CC-1
agreed that CC-1 would arrange to have a cleaning woman clean
PEIRCE's home in Teaneck, New Jersey, two times per week, in
exchange for PEIRCE hiring CC-1's company, ProGlow, to clean the

New York-Presbyterian WIC Program's various offices.

   d. On or about September 13, 2001, while in New York, New York, PEIRCE and CC-1 caused the New York-Presbyterian Hospital to send to Mejia Grocery, by United States Mail, a check for approximately $1,225, by falsely representing that the money was being used to pay Mejia Grocery for food demonstration materials.

   e. On or about October 16, 2001, PEIRCE used a WIC-program American Express card to purchase items from Touch of Class, including a stained glass ceiling lamp, a set of coasters and a decorative light switch.

   f. In or about October 2001, PEIRCE and CC-1, while in New York, New York, caused the New York-Presbyterian Hospital to send to ProGlow, by United States Mail, a check for approximately $6,262, for maintenance and housekeeping services.

   g. In or about October 2001, CC-1 arranged to have a cleaning woman clean PEIRCE's home in Teaneck, New Jersey, approximately two times per week.

   h. In or about October 2001, CC-1, while at the New York-Presbyterian WIC Program's offices in Manhattan, spoke by telephone with a cleaning woman, who was in PEIRCE's home in Teaneck, New Jersey, and discussed having the cleaning woman pick up money from CC-1 in Manhattan as payment for cleaning PEIRCE's home.

   i. On or about December 6, 2001, while in New

York, New York, PEIRCE and CC-1 caused the New York-Presbyterian Hospital to send to Mejia Grocery, by United States Mail, a check for approximately $1,250, by falsely representing that the money was being used to pay Mejia Grocery for food demonstration materials.

j.   On or about April 18, 2002, while in New York, New York, PEIRCE approved and submitted to the New York-Presbyterian Hospital a "Special Fund Authority for Voucher," in which PEIRCE represented falsely that the charges she had incurred on her WIC-program American Express card were for legitimate, WIC-program related expenses, and requested that the New York-Presbyterian Hospital pay approximately $3,573 to American Express.

k.   In or about May 2002, PEIRCE used a WIC-program American Express card to purchase kitchenware from Brylane Kitchen, including flatware, bowls, a cooking dish, and sundae cups.

l.   Sometime in May or June 2002, PEIRCE caused Brylane Kitchen to ship kitchenware to PEIRCE's address in Port St. Lucie, Florida.

m.   On or about June 4, 2002, while in New York, New York, PEIRCE and CC-1 caused the New York-Presbyterian Hospital to send to Joance Mini Market, by United States Mail, a check for approximately $1,250, by falsely representing that the money was being used to pay Joance Mini Market for food

demonstration materials.

n.　In or about June 2002, PEIRCE and CC-1, while in New York, New York, caused the New York-Presbyterian Hospital to send to ProGlow, by United States Mail, a check for approximately $5,635, for maintenance and housekeeping services.

o.　In or about June 2002, CC-1, while at the New York-Presbyterian WIC Program's offices in Manhattan, spoke by telephone with a cleaning woman, who was in PEIRCE's home in Teaneck, New Jersey, and discussed having the cleaning woman pick up money from CC-1 in Manhattan as payment for cleaning PEIRCE's home.

p.　On or about August 7, 2002, PEIRCE used a WIC-program American Express card to purchase items from Touch of Class, including a decorative mirror costing approximately $169.

q.　On or about November 14, 2002, while in New York, New York, PEIRCE and CC-1 caused the New York-Presbyterian Hospital to send to Joance Mini Market, by United States Mail, a check for approximately $1,250, by falsely representing that the money was being used to pay Joance Mini Market for food demonstration materials.

r.　In or about December 2002, PEIRCE and CC-1, while in New York, New York, caused the New York-Presbyterian Hospital to send to ProGlow, by United States Mail, a check for approximately $6,262, for maintenance and housekeeping services.

s.　In or about December 2002, CC-1, while at the

14

New York-Presbyterian WIC Program's offices in Manhattan, spoke
by telephone with a cleaning woman, who was in PEIRCE's home in
Teaneck, New Jersey, and discussed having the cleaning woman pick
up money from CC-1 in Manhattan as payment for cleaning PEIRCE's
home.

        t.    On or about June 5, 2003, while in New York,
New York, PEIRCE and CC-1 caused the New York-Presbyterian
Hospital to send to Joance Mini Market, by United States Mail, a
check for approximately $1,250, by falsely representing that the
money was being used to pay Joance Mini Market for food
demonstration materials.

        u.    In or about July 2003, PEIRCE and CC-1, while
in New York, New York, caused the New York-Presbyterian Hospital
to send to ProGlow, by United States Mail, a check for
approximately $6,262, for maintenance and housekeeping services.

        v.    In or about July 2003, CC-1, while at the New
York-Presbyterian WIC Program's offices in Manhattan, spoke by
telephone with a cleaning woman, who was in PEIRCE's home in
Teaneck, New Jersey, and discussed having the cleaning woman pick
up money from CC-1 in Manhattan as payment for cleaning PEIRCE's
home.

        w.    On or about July 3, 2003, PEIRCE used a WIC-
program American Express card to purchase items from the Ross
Simons Catalogue, including a Bordeaux bench costing
approximately $234, which bench was shipped PEIRCE's home in

15

Teaneck, New Jersey.

x.    On or about July 3, 2003, PEIRCE used a WIC-program American Express card to purchase items from the Ross Simons Catalogue, including an etched glass carafe and an etched glass ice bucket costing approximately $139.

y.    On or about July 17, 2003, PEIRCE used a WIC-program American Express card to purchase items from Touch of Class, including a decorative lamp costing approximately $215.

z.    On or about May 16, 2004, PEIRCE used a WIC-program American Express card to purchase a Cuisinart Ice Cream Maker from Chef's Catalog.

aa.   In or about January 2004, PEIRCE and CC-1, while in New York, New York, caused the New York-Presbyterian Hospital to send to ProGlow, by United States Mail, a check for approximately $6,262, for maintenance and housekeeping services.

bb.   In or about January 2004, CC-1, while at the New York-Presbyterian WIC Program's offices in Manhattan, spoke by telephone with a cleaning woman, who was in PEIRCE's home in Teaneck, New Jersey, and discussed having the cleaning woman pick up money from CC-1 in Manhattan as payment for cleaning PEIRCE's home.

cc.   On or about August 7, 2004, PEIRCE used a WIC-program American Express card to purchase two outdoor lamps from Lighting Expo for approximately $419.

dd.   In or about December 2004, PEIRCE and CC-1,

while in New York, New York, caused the New York-Presbyterian Hospital to send to ProGlow, by United States Mail, a check for approximately $6,053, for maintenance and housekeeping services.

ee.  In or about December 2004, CC-1, while at the New York-Presbyterian WIC Program's offices in Manhattan, spoke by telephone with a cleaning woman, who was in PEIRCE's home in Teaneck, New Jersey, and discussed having the cleaning woman pick up money from CC-1 in Manhattan as payment for cleaning PEIRCE's home.

ff.  On or about December 28, 2004, PEIRCE used a WIC-program American Express card to purchase from Chef's Catalogue a 40-piece dinner set and a rice cooker.

gg.  Sometime in December 2004 or January 2005, PEIRCE caused Chef's Catalogue to ship a 40-piece dinner set and a rice cooker to PEIRCE's address in Port St. Lucie, Florida.

hh.  On or about January 25, 2005, while in New York, New York, PEIRCE approved and submitted to the New York-Presbyterian Hospital a "Special Fund Authority for Voucher," in which PEIRCE represented falsely that the charges she had incurred on her WIC-program American Express card were for legitimate, WIC-program related expenses, and requested that the New York-Presbyterian Hospital pay approximately $1,446 to American Express.

ii.  On or about February 28, 2005, PEIRCE used a WIC-program American Express card to purchase from Touch of Class

a fern-leaf adorned corner etager costing approximately $139.

jj.  On or about March 12, 2005, PEIRCE used a WIC-program American Express card to purchase a Sony Camcorder from Wal-Mart for approximately $398.

kk.  In or about May 2005, PEIRCE and CC-1, while in New York, New York, caused the New York-Presbyterian Hospital to send to ProGlow, by United States Mail, a check for approximately $6,452, for maintenance and housekeeping services.

ll.  In or about May 2005, CC-1, while at the New York-Presbyterian WIC Program's offices in Manhattan, spoke by telephone with a cleaning woman, who was in PEIRCE's home in Teaneck, New Jersey, and discussed having the cleaning woman pick up money from CC-1 in Manhattan as payment for cleaning PEIRCE's home.

mm.  In approximately mid-August 2005, PEIRCE instructed employees of the New York-Presbyterian WIC Program to prepare and submit false time sheets to the New York-Presbyterian WIC Program, fraudulently representing that PEIRCE was working at the New York-Presbyterian WIC Program.

nn.  On or about August 23, 2005, PEIRCE approved and submitted to the New York-Presbyterian Hospital a "Special Fund Authority for Voucher," in which PEIRCE represented falsely that the charges she had incurred on her WIC-program American Express card were for legitimate, WIC-program related expenses, and requested that the New York-Presbyterian Hospital pay

18

approximately $8,404 to American Express.

oo.  In approximately September 2005, PEIRCE instructed employees of the New York-Presbyterian WIC Program to prepare and submit false time sheets to the New York-Presbyterian WIC Program, fraudulently representing that PEIRCE was working at the New York-Presbyterian WIC Program.

pp.  In approximately October 2005, PEIRCE instructed employees of the New York-Presbyterian WIC Program to prepare and submit false time sheets to the New York-Presbyterian WIC Program, fraudulently representing that PEIRCE was working at the New York-Presbyterian WIC Program.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(Mail Fraud – American Express Card Purchases)

The Grand Jury further charges:

15.  The allegations in paragraphs 1-6 and 14 are repeated, re-alleged and reincorporated as if set forth fully herein.

16.  From in or about May 1999, through in or about November 2005, in the Southern District of New York and elsewhere, CAROL PEIRCE, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit, a scheme to use

a New York-Presbyterian WIC Program American Express Card to purchase items and services for PEIRCE's own personal use, and then induce fraudulently the New York-Presbyterian WIC Program to pay American Express for the personal charges PEIRCE had incurred, for the purpose of executing such scheme and artifice and attempting so to do, did place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, to wit, PEIRCE, on multiple occasions, caused the New York-Presbyterian Hospital to send to American Express, by United States Mail, checks to pay for the American Express charges PEIRCE incurred in purchasing items and services for her personal use.

(Title 18, United States Code, Sections 1341 and 2.)


COUNT THREE

(Mail Fraud – ProGlow)

The Grand Jury further charges:

17.   The allegations in paragraphs 1-5, 7 and 14 are repeated, re-alleged and reincorporated as if set forth fully herein.

18.   From in or about September 2001, through in or

about August 2005, in the Southern District of New York and elsewhere, CAROL PEIRCE, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit, a scheme to defraud the New York-Presbyterian WIC Program into paying for a cleaning woman to clean PIERCE's personal residence, for the purpose of executing such scheme and artifice and attempting so to do, did place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, to wit, PEIRCE and CC-1, on multiple occasions, caused the New York and Presbyterian Hospital to send to ProGlow, by United States Mail, mail containing checks to pay for maintenance and housekeeping services.

(Title 18, United States Code, Sections 1341 and 2.)

COUNT FOUR

(Theft From A Program Receiving Federal Funds - Mejia Grocery)

The Grand Jury further charges:

19. The allegations in paragraphs 1-5, 8 and 14 are repeated, re-alleged and reincorporated as if set forth fully

21

herein.

20. From in or about February 2001, through in or about September 2003, in the Southern District of New York and elsewhere, CAROL PEIRCE, the defendant, being an agent of an organization that received in a one-year period benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, the New York-Presbyterian WIC Program, unlawfully, knowingly and willfully did embezzle, steal, obtain by fraud, and otherwise without authority knowingly convert to the use of a person other than the rightful owner and intentionally misapply, property that is valued at $5,000 and more and is owned by and under the care, custody and control of such organization, to wit, PEIRCE and CC-1 stole approximately $15,275 from the New York-Presbyterian WIC Program by falsely representing that the money was being used to pay Mejia Grocery in Queens, New York, for WIC program-related food demonstration materials.

(Title 18, United States Code, Sections 666 and 2.)

## COUNT FIVE

(Theft From A Program Receiving Federal Funds –
False Time Sheets)

The Grand Jury further charges:

21. The allegations in paragraphs 1-5, 9 and 14 are repeated, re-alleged and reincorporated as if set forth fully

herein.

22.  From in or about August 12, 2005, through in or about October 1, 2005, in the Southern District of New York and elsewhere, CAROL PEIRCE, the defendant, being an agent of an organization that received in a one-year period benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, the New York-Presbyterian WIC Program, unlawfully, knowingly and willfully did embezzle, steal, obtain by fraud, and otherwise without authority knowingly convert to the use of a person other than the rightful owner and intentionally misapply, property that is valued at $5,000 and more and is owned by and under the care, custody and control of such organization, to wit, PEIRCE caused others in the New York-Presbyterian WIC Program to submit false time sheets representing that PEIRCE was working at the New York-Presbyterian WIC Program, thereby inducing the New York-Presbyterian WIC Program to pay her over $10,000, when she in fact no longer worked for the New York-Presbyterian WIC Program and in fact was working at the Palm Beach County, Florida, Health Department.

(Title 18, United States Code, Sections 666 and 2.)

## FORFEITURE ALLEGATION

23.  As the result of committing, or conspiring to commit, one of more of the fraud offenses, in violation of Title 18, United States Code, Sections 371, 666, 1341 and 1343, alleged

in Counts One through Four of this Indictment, CAROL PEIRCE, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission the offenses, including, but not limited to, at least $100,000 in United States currency, representing the amount of proceeds obtained as a result of the charged fraud offenses.

## Substitute Asset Provision

24.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant, CAROL PEIRCE:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of said

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981, Title 28, United
States Code, Section 2461, and Title 18, United States Code,
Sections 371, 666, 1341 and 1343).


_____
FOREPERSON

_____
MICHAEL J. GARCIA AD
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

CAROL PEIRCE,

        **Defendant.**

### <u>INDICTMENT</u>
### 06 Cr. ____

(Title 18, United States Code, Sections
371, 666, 1341 & 2)

<u>MICHAEL J. GARCIA</u>
United States Attorney.

**A TRUE BILL**

_Mark Chao_
Foreperson.